UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.V., individually and on behalf of C.V.,<br><br>                      Plaintiff,<br><br>v.<br><br>Rye City School District,<br><br>                    Defendant. | **COMPLAINT**<br><br>22 Civ. 4255 |

## PRELIMINARY STATEMENT

1. By this action, Plaintiff challenges the final, state administrative decision regarding the public education of a student with a disability. This action is authorized by the Individuals with Disabilities Education Act ("IDEA").[1] See 20 U.S.C. § 1415(i)(3).[2]

2. Plaintiff is the parent of C.V., a minor child who is classified as eligible to receive special education pursuant to 20 U.S.C. §§ 1401(3), 1414(b)(4).

3. In an administrative proceeding held before Hearing Officer Robert Briglio, Esq., Plaintiff presented claims of inadequate education having been provided to C.V.

4. This proceeding before Hearing Officer Robert Briglio, Esq. concluded, after seven days of testimony, with a decision in favor of Plaintiff and her son C.V. dated October 25, 2021. A copy of Hearing Officer Briglio's decision is annexed hereto as Exhibit 1.

5. The Hearing Officer's decision was appealed by Defendant to the New York State Department of Education, Office of State Review.[3]

---

[1] Pub. L. No. 108-446, 118 Stat. 2724 (codified as amended at 20 U.S.C. §§ 1400-1500).

[2] "Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."

[3] Such appeals are provided for by 20 U.S.C. § 1415(g) and N.Y. Education Law § 4404(2).

6. On January 24, 2022, the New York State Department of Education, Office of State Review rendered its decision.

7. A copy of the decision of the Office of State Review is annexed hereto as Exhibit 2.

8. For the reasons stated below, Plaintiff is aggrieved by the decision of the Office of State Review.

## JURISDICTION AND VENUE

9. Jurisdiction is based upon 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, and 28 U.S.C. § 1343(a) in that the claims are asserted under laws providing for the protection of civil rights.  The cause of action is provided by 20 U.S.C. § 1415(i)(3).

10. Venue in this district is proper under 28 U.S.C. § 1391(b) because Defendant is a resident of this district and a substantial part of the underlying events occurred in this district.

## PARTIES

11. C.V. is a minor child and a student. He is a "child with a disability" within the meaning of 20 U.S.C. § 1401(3)(A).

12. L.V. is C.V.'s mother.  She is his "parent" within the meaning of 20 U.S.C. § 1401(23).

13. L.V. and C.V. reside within Westchester County, New York, and have resided there at all relevant times.

14. Based on established practice in IDEA cases within the Second Circuit, L.V. and C.V. are named in this Complaint by their initials.[4]

---

[4] See generally P.M. v. Evans-Brant Cent. Sch. Dist., No. 08-CV-168A(Sr), 2008 U.S. Dist. LEXIS 112262 (W.D.N.Y. Sept. 2, 2008) ("[I]n an action commenced by a parent or guardian on behalf of a minor child pursuant to the IDEA, the plaintiffs should be permitted to proceed, as a matter of course, using initials in place of full names in public filings with the Court."); C.B. v. Pittsford Cent. Sch. Dist., No. 08-CV-6462 (CJS), 2009 U.S. Dist. LEXIS 84010 (W.D.N.Y. Sept. 14, 2009); S.M.

15. Defendant Rye City School District is a municipal corporation created pursuant to Article 51 of the New York State Education Law.

16. Defendant is a Local Educational Agency ("LEA") as defined in 20 U.S.C. § 1401(19).

### STATEMENT OF FACTS

17. C.V. is now seventeen years old, and was thirteen to fifteen years old during the two school years which are the subject of Plaintiff's claims. He is both intelligent and interested in academics. Defendant severely limited C.V.'s academic participation by failing to provide him support needed for his condition of dyslexia.

18. Dyslexia is "a severe learning disability that hinders [the student's] ability to decipher written symbols. Dyslexia has a neurological basis, and although there is no cure, a dyslexic child can learn methods to decipher words." Evans v. Board of Educ., 930 F. Supp. 83, 86 (S.D.N.Y. 1996).

19. Plaintiff brought an administrative proceeding as allowed by 20 U.S.C. § 1415(c)(2), (f) and N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i), (j), in which she claimed that the Defendant School District did not provide a Free Appropriate Public Education ("FAPE") to C.V. for the 2018-2019 and 2019-2020 school years, his eighth and ninth grade years.

20. For those two school years, after hearing Defendant's offer of a public program for C.V., Plaintiff rejected that offer as inappropriate and instead placed C.V. at a private school which is specialized for students with dyslexia.

21. Plaintiff claimed from Defendant reimbursement of the tuition she expended for C.V.'s education at the private school for the 2018-2019 and 2019-2020 school years.

---

v. Evans-Brant Cent. Sch. Dist., Nos. 09-CV-6865, 09-CV-9225, 2013 U.S. Dist. LEXIS 107567 (W.D.N.Y. Jul. 31, 2013).

22. New York uses a two-tier administrative process for special education claims such as those brought by Plaintiff under 20 U.S.C. § 1415(c)(2), (f) and N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i), (j).  The first step is an Impartial Hearing before an Impartial Hearing Officer.  The second step is review by the New York State Education Department, Office of State Review (the "SRO").

23. The Impartial Hearing Officer assigned to hear Plaintiff's claims, Robert Briglio, Esq., sustained Plaintiff's claims, finding that Defendant indeed denied C.V. a FAPE for each of the two school years in question.  He also found that the private school Plaintiff chose was appropriate for C.V.

24. Hearing Officer Briglio awarded Plaintiff almost complete relief. The Hearing Officer awarded Plaintiff full tuition reimbursement for both school years, minus a 10% reduction in the reimbursement for one of the school years.

25. When Defendant lodged an administrative appeal of Hearing Officer Briglio's decision to the SRO, the SRO found, contrary to Hearing Officer Briglio, that Defendant had offered C.V. a FAPE for the 2018-2019 and 2019-2020 school years.  Accordingly, the SRO denied all relief to Plaintiff.

26. The administrative record created by the parties in the hearing showed that, for the 2018-2019 and 2019-2020 school years, the IEPs offered by the District to C.V. were insufficient to provide him a FAPE, because they provided no targeted support for dyslexia.

27. In addition, Plaintiff has in her possession additional evidence, beyond the administrative record, including a neuropsychological evaluation report concerning C.V. dated January 9, 2021, which further demonstrates the inadequacy of the District's proffered IEPs.  20

U.S.C. § 1415(i)(2)(C)(ii) empowers the Court to "hear additional evidence at the request

of a party."

28. Inter alia, the SRO's decision was erroneous for the following reasons:

    A.  The SRO made an error of law in declining to consider evidence that

        immediately after leaving the District's program and being placed in the

        private program for students with dyslexia, C.V. experienced a

        turnaround in academic performance.  Ex. 2 p. 20.[5]  This evidence

        persuasively demonstrated that while in-District, C.V. was missing

        needed services which were ultimately supplied by the private school.

        The SRO misapplied R.E. v. New York City Dep't of Educ., 694 F.3d

        167 (2d Cir. 2012), C.L.K. v. Arlington Sch. Dist., 2013 WL 6818376

        (S.D.N.Y. Dec. 23, 2013), F.O. v. New York City Dep't of Educ., 976

        F.Supp. 2d 499 (S.D.N.Y. 2013), and related cases which provide, in

        some instances, a rule against retrospective evidence.  See Ex. 2 p. 20.

        Those cases do not apply to this circumstance of Plaintiff underscoring

        the deprivation of needed services by showing how C.V.'s potential was

        unlocked when they were, in fact, provided.

    B.  The SRO misinterpreted the available evaluative information as to

        C.V.'s needs.  Ex. 2 p. pp. 21-25.  Although the SRO correctly

        acknowledged that District records showed that C.V. "had a learning

        disability specific to the areas of reading and writing which inhibited his

---

[5] The SRO generally denied consideration of this evidence, but admitted that the evidence could validly be considered when assessing the adequacy of the District's program for C.V.'s 2019-2020 school year, because at that point he had already been in the private school for students with dyslexia for a full school year and the District heard from the private school staff when designing his 2019-2020 program. Ex. 2 p. 20 n.8; see also Ex. 2 p. 33.

ability to showcase his true abilities" and "required special education
services to access the general education curriculum," the SRO did not
acknowledge C.V.'s need for instruction targeting his condition of
dyslexia, nor for research-based instruction, which is the only instruction
demonstrated to be reliable in C.V.'s situation of significantly impaired
literacy due to dyslexia.  Id.

C.  The SRO erroneously disregarded the unrebutted testimony of a literacy
expert, recognized at the hearing as an expert witness (Impartial Hearing
Transcript p. 718), that C.V. required "Direct instruction in syllable
structure, spelling, spelling rules, and decoding rules" (see, e.g.,
Impartial Hearing Transcript pp. 817, 824), that the integrated co-
teaching classroom was inappropriate for C.V.'s particular needs
(Impartial Hearing Transcript p. 811), and other unrebutted expert
testimony which dispositively established certain educational needs of
C.V.

D.  The SRO erroneously discredited and disregarded Plaintiff's evidence
that the District attempted to schedule a special education support,
namely "resource room" services, at a time that conflicted with other
academic programming in which it knew C.V. was attempting to
participate.  The District's scheduling of special education supports
denied C.V. access to other, desired programming that his non-disabled
peers freely participated in, subverting its ostensible purpose of allowing

him better access to the curriculum, and constituting discrimination.  Ex.
2 pp. 26-28.

E.  The SRO found, contrary to the record evidence, that the resource room
program was an effective support for C.V.  Ex. 2 p. 28.  The SRO
erroneously rejected Plaintiff's contention that, putting aside the issue
that it conflicted with other programming, the resource room program
had been proven ineffective for C.V. based on C.V.'s concrete past
experience with the program.

F.  The SRO misinterpreted administrative guidance issued by the New
York State Department of Education called "Students with Disabilities
Resulting from Dyslexia, Dysgraphia, and Dyscalculia: Questions and
Answers."[6]  Ex. 2 p. 28.  From this guidance, the SRO extracted the
general principle that instruction for a student with "dyslexia,
dysgraphia, and/or dysgraphia" "may vary across individual students,"
but failed to acknowledge that the guidance requires reference to
scientific research regarding dyslexia and effective literacy instruction
when designing instruction for students with dyslexia, and noted that
students with dyslexia may need "targeted assistance, which includes
research-based, specific reading . . . instruction."   Ex. 2 p. 28.

G.  The SRO misconstrued Plaintiff's claim before the two-tiered
administrative tribunal as a claim that "the diagnosis of dyslexia should
have dictated the student's programming." Ex. 2 p. 29.  Plaintiff did not

---

[6] **Available at** https://www.p12.nysed.gov/specialed/publications/documents/q-and-a-students-with-dyslexia-dysgrahia-dyscalculia.pdf.

plead her claim in this manner.  Rather, she had claimed that based on

C.V.'s specific circumstance as detailed by professional evaluators

whose expertise the District acknowledged, C.V. required the type of

instruction that is specialized for persons with dyslexia.  Plaintiff pled

that C.V. needed such instruction to have a meaningful chance of

overcoming the reading and writing weaknesses that were associated

with the condition of dyslexia in his specific case.

H.   The SRO erroneously found that C.V.'s needs could be met in an

integrated co-teaching classroom of up to twenty-five students,

supplemented with resource room or, for the 2019-2020 school year, a

forty-minute per day "educational support class" of eight students.  Ex.

2 pp. 31-32.  This finding was contrary to the evaluative data concerning

C.V., such as the neuropsychological reports of Jeanne Dietrich, Ph.D.,

which showed that he needed a significant amount of 1:1 instruction in

order to adequately remediate the impairments in reading and writing

resulting from dyslexia, and also required a smaller overall class size

that grouped him with students of similar ability levels.

I.    The SRO did not adequately credit the juxtaposition between C.V.'s

high intelligence, high effort, and very low grades in his seventh grade

year.  The initial administrative decision of Hearing Officer Briglio

inferred that C.V.'s very low grades in his seventh grade year (the 2017-

2018 school year) resulted from lack of support for his disabling

impairment.  Ex. 1 p. 18.  The decision was bolstered by the fact that

8

once C.V. entered the specialized private program the following year,

his grades dramatically improved. Id. Combined with the evaluative

data and expert testimony concerning the types of support services C.V.

required, this evidence persuasively showed that the programs designed

by Defendant for the eighth and ninth grade years (2018-2019 and 2019-

2020) were not reasonably calculated to allow C.V. to make meaningful

progress. Ex. 1 pp. 17-18 ("I find C.'s grades in those subjects requiring

substantial reading- ELA, Social Studies, and Science – were

consistently far below C .'s cognitive potential . . . and I find that the

failure of C.'s special education program at the District to address C.'s

very substantial learning disability, Dyslexia, was the cause of the

substantial disparity between C.'s cognitive ability and academic

performance.").

J.   The SRO did not take into account the vagueness of Defendant's

evidence describing its "educational support class."  The SRO found that

the eight-student "educational support class" helped constitute what the

SRO viewed as an appropriate program for C.V., Ex. 2 p. 36, but

disregarded Plaintiff's contention that the testimony presented by the

District had described the "educational support class" in terms of

uncertain hypotheticals and other vague statements, e.g., "there could be

preteaching or reteaching" (Impartial Hearing Transcript pp. 390-91;

430) (emphasis added).  This contention was particularly meaningful in

the context of C.V.'s need for targeted research-based supports designed to address the particular difficulties that accompany his dyslexia.

K. The SRO erroneously described the decision of Hearing Officer Briglio (Ex. 1) as privileging the findings of the private evaluator (Jeanne Dietrich, Ph.D.) retained by Plaintiff over the public evaluators used by the Defendant School District. Ex. 2 pp. 30-35. This analysis overlooked the substantial consistency between the data gathered by the two types of evaluators, and the lack of analysis and conclusions in the District's evaluative reports versus the clear findings and conclusions in the private evaluator's report. See Ex. 1 pp. 18-19. In addition, as a matter of law the Hearing Officer's interpretation of Dr. Dietrich's testimony deserved special weight because he listened to her testimony firsthand. See D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010) (crediting administrative law judge's opinion on the basis that she "has heard live testimony").

L. The SRO made an error of law in finding that Hearing Officer Briglio "fail[ed] to give due deference to the views of the district educators and staff," Ex. 2 p. 35. The SRO misinterpreted the concept of administrative deference in the context of IDEA proceedings. There is no deference due from state administrative adjudicators to the school district's chosen evaluators, particularly not when the private evaluator in question holds a state license, as Dr. Dietrich did. See, e.g., R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012).

M. The SRO misapplied the standard announced by <u>Endrew F. v. Douglas Cnty. Sch. Dist. RE-1</u>, 137 S. Ct. 988 (2017), inasmuch as the SRO did not compare the programs offered by Defendant to C.V. for his 2018-2019 and 2019-2020 school years to the required standard of a program "appropriately ambitious in light of his circumstances." 137 S. Ct. at 1000. The SRO misapplied <u>Endrew F.</u>'s rule that "the adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." <u>Id.</u> at 1001; <u>see</u> Ex. 2 pp. 16, 25 n.12.

### COUNT 1

#### DENIAL OF FREE APPROPRIATE PUBLIC EDUCATION UNDER THE IDEA

29. The January 24, 2022 administrative decision misconstrues the record and the applicable review standard and is contrary to law.

30. Due to its erroneous decision, the New York State Department of Education, Office of State Review did not vindicate C.V.'s right to a Free Appropriate Public Education ("FAPE")[7] and did not provide Plaintiff the relief to which she was entitled under IDEA.

31. Plaintiff is entitled to relief as set forth below.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Assume jurisdiction of this action;

(B) Direct the New York State Department of Education, Office of State Review to produce a certified copy of the administrative record;

(C) Receive the administrative record into evidence, under seal;

---

[7] <u>See</u> 20 U.S.C. §§ 1401(9), 1412(a)(1).

(D)  Receive additional evidence from Plaintiff;

(E)  Reverse the decision of the New York State Department of Education, Office of State Review and declare that Defendant failed to offer C.V. a Free Appropriate Public Education for the 2018-2019 and 2019-2020 school years;

(F)  Award Plaintiff full reimbursement of her expenditure for C.V.'s private school tuition for the 2018-2019 school year (\$ 59,700) and the 2019-2020 school year (\$ 59,900). See Ex. 1 p. 24.

(G)  To effectuate the relief provided for in Paragraph (F), supra, enter a money judgment in Plaintiff's favor in the amount of \$ 119,600.

(H)  Declare that Plaintiff is the prevailing party in this matter;

(I)  Awards Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 20 U.S.C. § 1415(i)(3).

Dated: May 24, 2022

Respectfully submitted,

Benjamin Brown, Bar No. BB 1614
Gina DeCrescenzo, P.C.
180A S Broadway, Ste 100
White Plains, NY 10605
Tel:   914-615-9177
Fax:   914-615-9176
Email:  bb@decrescenzolaw.com